UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ MARINA V.N., | No. 1:25-cv-01845-KES-SKO (HC) |
| Petitioner, | |
| v. | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| TIMOTHY S. ROBBINS, Field Office Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary of the United States Department of Homeland Security; CHRISTOPHER CHESTNUT, Administrator of California City Detention Facility; and PAMELA BONDI, Attorney General of the United States, | Doc. 1 |
| Respondents. | |

    This habeas action concerns the re-detention of petitioner Luz Marina V.N., a noncitizen who was detained and released in October 2022 then recently re-detained.[1] For the reasons explained below, the petition for writ of habeas corpus is granted.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only her first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

**I.     Background**

Petitioner is a 34-year-old asylum-seeker from Peru who entered the United States without inspection on October 7, 2022.  Doc. 8-1, Kichak Decl. at ¶ 6.  That same day, immigration authorities apprehended and detained her.  *Id.*  On October 12, 2022, immigration officials provided petitioner with a notice to appear for removal proceedings.  *See* Doc. 8-2, Ex. 2.  Immigration officials released petitioner on her own recognizance pending those removal proceedings.  Doc. 8-3, Ex. 3.  They provided petitioner with a notice of custody determination which stated that she was being released "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act[,]" which is codified at 8 U.S.C. § 1226, "pending a final administrative determination in [her] case."  Doc. 8-4, Ex. 4.  They also provided petitioner with an order of release on recognizance which stated that she was being released "in accordance with" 8 U.S.C. § 1226, provided she comply with certain conditions.  Doc. 8-3, Ex. 3.

The regulations that authorize immigration authorities to release a noncitizen on her own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8).  "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Following her release, petitioner established a life in California.  Doc. 1 at ¶ 27.  Petitioner met her current partner, and they became engaged and moved in together.  *Id.* ¶¶ 27, 30.  Petitioner worked as a housekeeper and at a fast-food restaurant.  *Id.* ¶ 27.  She also began attending an adult school to learn English.  *Id.*  Respondents do not dispute petitioner's assertion that she maintained a clean criminal record.  Doc. 1 at ¶ 1; *see* Doc. 8.  Respondents also do not dispute petitioner's assertion that, for nearly three years, she appeared for all scheduled check-ins, with one exception: she confused the date of her check-in that was scheduled for November 9, 2023, and she showed up on a later date.  Doc. 1 at ¶¶ 25–29, 31; *see* Doc. 8.  Petitioner indicates that when she showed up on the later date, she explained the mistake to an Immigration and

2

Customs Enforcement ("ICE") agent, who assured her that everything was all right. Doc. 1 at ¶¶ 25–29, 31.

Nearly two years later, on October 2, 2025, ICE agents arrested petitioner when she reported for a scheduled check-in at the ICE office in San Francisco. Doc. 8-1, Kichak Decl. at ¶ 8. Respondents assert that they did so to place petitioner into expedited removal proceedings. *Id.* When petitioner expressed a fear of returning to Peru, she was provided with a credible fear interview with an asylum officer who issued a negative credible fear determination. *Id.* ¶ 9. Petitioner requested review of that determination by an immigration judge. *Id.* The immigration judge vacated the negative credible fear finding, and petitioner was placed back into removal proceedings pursuant to 8 U.S.C. § 1229a. *Id.* Petitioner is now detained at California City Detention Center. *Id.* ¶ 8. Respondents assert that petitioner is detained pursuant to 8 U.S.C. § 1225(b). *Id.* ¶ 11; Doc. 8 at 4.

**II.     Procedural History**

On December 2, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2, arguing that her re-detention without a pre-deprivation bond hearing violated the Due Process Clause. The Court issued a briefing schedule and informed the parties that it intended to rule directly on the petition. Doc. 4. Respondents filed an opposition on December 19, 2025. Doc. 8. Petitioner filed a reply on December 20, 2025. Doc. 9.

**III.    Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its

protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### IV.     Discussion

Before turning to petitioner's due process claim, the Court notes that the parties dispute which statutory detention authority should have applied to petitioner. Petitioner argues that, if respondents believed she was subject to re-detention, they were required to proceed under 8 U.S.C. § 1226(a); respondents assert that petitioner is subject to 8 U.S.C. § 1225(b)(1). Doc. 9 at 2–3; Doc. 8-1, Kichak Decl. at ¶ 11.

Petitioner is correct; respondents cannot apply § 1225(b)(1) to petitioner. Respondents' records confirm that petitioner was released in 2022 "in accordance with" 8 U.S.C. § 1226(a). Section 1225(b)(1) applies to "an alien . . .who is arriving in the United States or . . . [a]n alien . . . who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ." 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II). But respondents' records establish that immigration authorities released petitioner in 2022 on conditional parole pursuant to 8 U.S.C. § 1226(a), and she is therefore not "[a]n alien . . . who has not been admitted or paroled." Doc. 8-3, Ex. 3; *see* 8 U.S.C. § 1226(a) (permitting the government to release a detainee on "bond" or "conditional parole"). Additionally, as someone who has been physically present for over two years, petitioner is not "an alien . . . who is arriving in the United States." *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1012 (9th Cir. 2020) (explaining that a "person standing at the border is . . . [at] the penultimate stage in the process of arriving in the United States" within the meaning of section 1225).[2]

---

[2] To the extent respondents argue that 8 U.S.C. § 1225(b)(2)(A) applies, that argument is incorrect for the reasons set forth in *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025). Instead, the discretionary detention authority of 8 U.S.C. § 1226(a), which applies to aliens already in the country, applies to petitioner, as reflected in both the notice of custody determination and the order of release on recognizance that immigration authorities provided to petitioner. Doc. 8-3, Ex. 3; Doc. 8-4, Ex. 4.

The Court next analyzes petitioner's due process claim. This analysis proceeds "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, her "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole

undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted).  Therefore, a parolee possesses a protected interest in her "continued liberty." *Id.* at 481–84.

Immigration officials' release of petitioner in 2022 pursuant to 8 U.S.C. § 1226(a) was similar.  Among other things, it allowed her to live in California for nearly three years, where she met and became engaged to her current partner.  The Court finds that petitioner has a protected liberty interest in her release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).  The Court must therefore determine what process is due before the government may terminate her liberty.

### 2. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Petitioner had been released on her own recognizance for nearly three years prior to her recent detention, and during that time, she worked, became engaged, and attended school.  Her re-detention denies her that freedom.

6

1    Turning to the second *Mathews* factor, "the risk of an erroneous deprivation [of liberty] is
2    high" where, as here, "[the petitioner] has not received any bond or custody redetermination
3    hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal.
4    May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is
5    justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*,
6    533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history and
7    respondents do not dispute that she complied with all terms of her release, with the exception of
8    one missed check-in nearly two years before she was re-detained. *See* Doc. 1 at ¶¶ 25–29, 31;
9    Doc. 8. As there have been no procedural safeguards to determine if petitioner's re-detention is
10   justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."
11   *A.E.*, 2025 WL 1424382, at *5.

12   Third, although the government has a strong interest in enforcing the immigration laws,
13   the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*,
14   415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95
15   (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal"
16   cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any
17   point, it has the power to take steps toward doing so; but its interest in doing so without a hearing
18   is low." *Ortega*, 415 F. Supp. 3d at 970.

19   On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where
20   the government must prove that she is a flight risk or danger to the community by clear and
21   convincing evidence. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1038 (N.D. Cal. 2025). That
22   hearing should have been provided before petitioner was detained. "'[T]he root requirement' of
23   the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is
24   deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S.
25   532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494
26   U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution
27   requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme
28   Court has held that due process requires a pre-deprivation hearing before those released on parole

from a criminal conviction can have their bond finally revoked.  *See Morrissey*, 408 U.S. at 480–86.  The same is true for those subject to revocation of probation.  *Gagnon v. Scarpelli*, 411 U.S. at 782.

Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre-deprivation* hearing [was] required to satisfy due process."  *Guillermo M. R.*, 2025 WL 1983677, at *9.  Numerous district courts have reached a similar conclusion.  *See, e.g.*, *id.*; *Garcia*, 2025 WL 1927596, at *5; *Pinchi*, 792 F. Supp. 3d at 1036–38; *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 787 F. Supp. 3d at 1093–95; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

**V.     Conclusion and Order**

Accordingly, the petition for writ of habeas corpus, Doc. 1, is GRANTED.  Respondents are ORDERED to release petitioner immediately.  Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

The Clerk of Court is directed to close this case and enter judgment for petitioner.

IT IS SO ORDERED.

Dated:   December 21, 2025                         _____
                                                    UNITED STATES DISTRICT JUDGE